UNITED STATES DISTRICT COURT
SOUTHERN DISTICT OF NEW YORK
------------------------------------------------------------------X
PARK YIELD, LLC,　　　　　　　　　　　　　　Index No.

　　　　　　　　Plaintiff,　　　　　　　　　　**COMPLAINT**

　　-against-

ERIC BROWN, BESC REALTY COMPANY LLC,
STERLING MANAGEMENT, LLC, 4 SQUARE
MANAGEMENT, LLC, PARK PRO SYSTEMS, LLC,
JOHN DOES 1 AND 2,

　　　　　　　　Defendant.
------------------------------------------------------------------X

　　Park Yield, LLC ("Park Yield"), by its undersigned counsel, as and for its Complaint against Defendants Eric Brown ("Brown"), BESC Realty Company, LLC ("BESC"), Sterling Management, LLC ("Sterling"), 4 Square Management, LLC ("4 Square"), Park Pro Systems, LLC ("Park Pro", together with BESC, Sterling, 4 Square and Park Pro, the "Corporate Defendants") and John Does 1 and 2, alleges as follows:

## NATURE OF THIS ACTION

　　1.　　This action arises out of a sale of unregistered securities in violation of §12(a)(1) of the Securities Act of 1933 (the "Securities Act"). In the summer of 2017, Defendant Brown used interstate means to cause the Corporate Defendants to effectuate a sale to Park Yield of minority equity interests (the "Securities") in Sterling and 4 Square. Sterling and 4 Square operate parking garages in Brooklyn. The Securities that Brown sold to Plaintiff were not registered with the Securities Exchange Commission ("SEC"). By its complaint, Park Yield seeks disgorgement of $280,000 that it paid for the Securities as well as pre-judgment interest.

　　2.　　Park Yield also seeks compensatory damages for violation of Section 10(b) of the Securities and Exchange Act (the "Exchange Act"), and Rule 10b-5 promulgated thereunder.

1

This claim is based on Brown's failure to inform Park Yield that in 2014 he was convicted of felony mail fraud in connection with his participation in a fraudulent securities market manipulation scheme, as well as Brown's false representation to Park Yield that the Securities did not need to be registered with the SEC. Park Yield also asserts common law fraud and negligent misrepresentation claims on these same bases.

## PARTIES

3. Park Yield is a Delaware limited liability company wholly owned and managed by Alexander Kravets ("Kravets").

4. Brown is a resident of New York City with offices at 1461 1st Avenue, New York, New York 10075. He directly or indirectly owns a controlling interest in and manages each of the Corporate Defendants.

5. BESC is a New York limited liability company. Its principal place of business is located at 1461 1st Avenue, New York, New York 10075. BESC owns a controlling interest in Defendants Sterling and 4 Square.

6. Sterling is a Wyoming limited liability company. Its principal place of business is located at 1461 1st Avenue, Suite 132, New York, New York, 10075. On or about July 28, 2017, Brown caused BESC to sell a forty percent (40%) interest in Sterling to Park Yield.

7. 4 Square is a New York limited liability company. Its principal place of business is located at 1461 1st Avenue, Suite 132, New York, New York, 10075. On or about August 3, 2017, Brown caused BESC to sell a forty percent (40%) interest in 4 Square to Park Yield.

8. Park Pro is a New York limited liability company. Its principal place of business is located at 1461 1st Avenue, Suite 132, New York, New York, 10075. Park Pro is the "Manager" of Sterling and 4 Square.

9. John Doe 1 is a member of Park Pro who, along with Brown, manages Sterling and 4 Square.

10. John Doe 2 is a lawyer who prepared the investment contracts by which Brown caused the Securities to be sold to Park Yield.

## JURISDICTION AND VENUE

11. This Complaint asserts claims pursuant to §12(a)(1) of the Securities Act (15 U.S.C. §78a) and §10(b) of the Exchange Act (15 U.S.C. §78(j)), and Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

12. This Court has subject matter jurisdiction over the federal claims pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and §22 of the Securities Act (15 U.S.C §77v). It has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, as they form part of the same case or controversy as the federal claims.

13. This Court has personal jurisdiction over Defendants because they are domiciled in New York or, if not, pursuant to New York's long-arm statute, CPLR 302(a), because Defendants: (1) transact business in the State of New York; (2) have contracted to supply services in the State of New York; (3) committed tortious acts in the State of New York; and/or (4) own, use, or possess real property within the State of New York. Defendants have purposefully availed themselves of the laws of the State of New York. The investment contracts by which Defendants sold the Securities to Park Yield both provide that they are governed by New York law and that any litigation shall be brought in New York.

14. Venue is properly laid in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. §78aa) Section 22 of the Securities Act (15 U.S.C. §77v) and 28 U.S.C. §1391, because, *inter alia*, (i) Defendants transact business in this District, (ii) a substantial part of the

events, misstatements and omissions, including certain of the transactions, offers, acts, practices and course of conduct constituting violations of the federal securities laws, occurred within this District; and (iii) Defendants are otherwise subject to personal jurisdiction in this District.

## **BACKGROUND**

Brown's Criminal Conviction

15.  On or about April 25, 2014, Brown pled guilty to one count of mail fraud, in violation of Title 18, United States Code, Section 1341. A copy of Brown's Plea Agreement is appended as **Exhibit A**. The Information to which Brown pled guilty states:

> ERIC BROWN, did knowingly and with intent to defraud devised and intend to devise a scheme and artifice to defraud and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations, and promises were false and fraudulent when made, and attempting to do so, did knowingly cause to [be] delivered certain mail matter by a private and interstate carrier, according to direction thereon.
>
> \* \* \* \*
>
> The manner and means by which ERIC BROWN sought to accomplish the purpose of the scheme and artifice included, but was not limited to the following:
>
> ERIC BROWN engaged in a pay-to-play scheme to cause a purported hedge fund to purchase DAMH stock in exchange for an undisclosed inducement in an effort to artificially increase the trading volume and price of DAMH common stock in the Pink Sheets.
>
> In or around October 2011, in a series of telephone calls, electronic mail communications, and text messages with a cooperating individual, ERIC BROWN agreed to pay the purported hedge fund manager an undisclosed inducement of 5,000 shares of DAMH in exchange for the purported hedge fund's agreement to purchase approximately 20,000 DAMH shares.
>
> Through the purported hedge fund's purchase, ERIC BROWN sought to manipulate the market and give the investing public the

>false impression that DAMH's stock price was rising and that there
>was public interest in DAMH stock.

A copy of the Information is appended as **Exhibit B**.

16. On October 9, 2014, Brown was sentenced to probation for a term of two years. As a special condition of supervision, Brown was sentenced to participate in a Home Detention Electronic Monitory Program for a period of eight months. A copy of the sentencing Judgment is appended as **Exhibit C**.

Brown Solicits Sales Of The Securities To Park Yield

17. In July 2017, Brown solicited Kravets to invest in five parking facility ventures. Each contemplated an investment of between $125,000 and $200,000 in exchange for a forty percent (40%) equity stake in the venture.

18. Kravets decided to invest in two of the proposed ventures - those operated by Sterling and 4 Square. Sterling held a twenty year lease on a parking garage at 500 Sterling Place, Brooklyn, New York. 4 Square held a ten year lease on a parking garage located at 53 Broadway, Brooklyn, New York.

19. Brown arranged for his lawyer (John Doe 1) to prepare an "Investment and Operation Agreement" that Brown caused the Corporate Defendants to use in selling the Securities to Park Yield.

The Sterling Investment Contract

20. On or about July 28, 2017, Park Yield and Sterling entered into an Investment and Operation Agreement (the "Sterling Investment Contract"). A copy of that agreement is appended as **Exhibit D**.

21. Pursuant to that contract, Brown caused BESC to sell to Park Yield a forty percent (40%) equity interest in Sterling for $150.000.

5

22. The contract provides that Sterling will make distributions to Park Yield equal to: (a) forty percent (40%) of Sterling's net profits, to be paid monthly; and (b) ten percent (10%) of Park Yield's initial investment per annum, to be paid in equal monthly installments of $1,250.

23. The contract specifies that Sterling "shall make any and all business decisions related to the company" and that it "will remain responsible for the day-to-day, mid-range and long-term operational strategies related" thereto.

24. In the contract, Park Pro is designated as the "Manager" of Sterling.

25. Brown, as signatory to the Sterling Investment Contract and by virtue of his control over the Corporate Defendants, falsely represented and warranted in the contract that no registration was required in connection with the execution, delivery and performance of the contract or for the consummation of the transaction contemplated thereby.

The 4 Square Investment Contract

26. On or about August 3, 2017, Park Yield and 4 Square entered into an Investment and Operation Agreement (the "4 Square Investment Contract", together with the Sterling Investment Contract, the "Investment Contracts"), a copy of which is appended as **Exhibit E**.

27. Pursuant to that contract, Brown caused BESC to sell to Park Yield a forty percent (40%) equity interest in 4 Square for $130,000.

28. The contract provides that 4 Square will make distributions to Park Yield in the following amounts: (a) forty percent (40%) of the net profits of 4 Square, to be paid monthly; and (b) ten percent (10%) of Park Yield's initial investment per annum, to be paid in equal monthly installments of $1,083.33.

29. The contract specifies that 4 Square "shall make any and all business decisions related to the company" and that it "will remain responsible for the day-to-day, mid-range and long-term operational strategies related" thereto.

30. In the contract, Park Pro is designated as the "Manager" of 4 Square.

31. Brown, as signatory to the 4 Square Investment Contract and by virtue of his control over the Corporate Defendants, falsely represented and warranted in the contract that no registration was required in connection with the execution, delivery and performance of the contract or for the consummation of the transaction contemplated thereby.

Damages

32. Park Yield paid BESC a total of $280,000 for the Securities.

33. Sterling and 4 Square have, and on information and belief will continue to, not make distributions as required under the Investment Contracts.

34. The fraudulent misrepresentations and omissions that Brown made, or caused to be made, to induce Park Yield to purchase the Securities are part of a pattern of behavior consistent with the market manipulation scheme to which Brown pled guilty in 2014. In both cases, Brown knowingly and with intent to defraud devised a scheme to obtain money by means of materially false and fraudulent representations, omissions and promises made in connection with a sale of securities.

### FIRST CLAIM FOR RELIEF
(Violation of Securities Act §12(a)(1))

35. Park Yield repeats and realleges each of the allegations contained in ¶¶ 1-35 as if fully set forth herein.

36. Park Yield paid $280,000 for the Securities.

37. Park Yield's return on its investment was to come solely from the efforts of others. Specifically from the efforts of (i) Pro Park, as the Manager of Sterling and 4 Square, (ii) BESC, as the majority shareholder of Sterling and 4 Square, and (iii) Brown, as the controlling shareholder of BESC and Pro Park, and indirectly, through BESC, of Sterling and 4 Square.

38. Neither Park Yield nor Kravets, or any entity controlled by Kravets, had any role in the management or operations of Sterling or 4 Square.

39. Park Yield's return on its investments was to be comprised principally of pro-rata distributions of net profits generated by the operation of the parking garages leased by Sterling and 4 Square.

40. Park Yield's return on its investments was to be tied to that of Brown, through BESC, in so far as the return to Park Yield and the return to Brown/BESC were both to be derived from the profits of Sterling and 4 Square.

41. The Securities were not registered with the SEC.

42. Defendants used interstate means in connection with the solicitation and sale of the Securities. Brown solicited the sales by means of e-mail communications and telephone calls to Kravets, including calls and e-mails from Brown, in New York, and to Kravets, in New Jersey.

43. Each of the Defendants were instrumental in the solicitation and/or sale of the Securities.

44. Brown solicited the sale, executed the Investment Contracts, and controlled both BESC, which owned the securities sold to Park Yield, and Park Pro, which managed Sterling and 4 Square.

45. BESC owned the Securities sold to Park Yield and was the controlling shareholder of Sterling and 4 Square. Brown used BESC as an instrumentality to effectuate the sale of unregistered securities by means of fraud.

46. Sterling is a party to the Sterling Investment Contract wherein it is falsely represented that the Sterling Securities did not need to be registered with the SEC. Brown used Sterling as an instrumentality to effectuate the sale of unregistered securities by means of fraud.

47. 4 Square is a party to the 4 Square Investment Contract wherein it is falsely represented that the 4 Square Securities did not need to be registered with the SEC. Brown used 4 Square as an instrumentality to effectuate the sale of unregistered securities by means of fraud.

48. Park Pro, as the Manager of Sterling and 4 Square, caused those entities to enter into the Investment Contracts. Brown used Park Pro as an instrumentality to effectuate the sale of unregistered securities by means of fraud.

49. John Doe 1, along with Brown, directed Park Pro to cause Sterling and 4 Square to enter into the Investment Contracts.

50. John Doe 2 prepared the Investment Contracts by which the Securities were sold to Park Yield.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 10(b) of the Exchange Act**
**And Rule 10b-5 Promulgated Thereunder)**

51. Park Yield repeats and realleges each of the allegations contained in ¶¶ 1-51 as if fully set forth herein.

52. Defendants did not inform Park Yield that Brown had been convicted of a felony in connection with the sale of securities.

53. Defendants falsely represented, and/or caused the Corporate Defendants to falsely represent, to Park Yield that the Securities did not need to be registered with the SEC.

54. Defendants made these omissions and misrepresentations knowingly or recklessly with intent to deceive Park Yield.

55. Defendants knew or should have known that Brown's felony conviction, and the failure to register the Securities with the SEC, would be material information to Park Yield.

56. Park Yield reasonably relied on these misrepresentations and omissions in deciding to purchase the Securities. It had no reason to believe that Brown had been convicted of a securities-related fraud or that the Securities were required to be registered with the SEC. It reasonably expected that Defendants would be honest and forthcoming in disclosing the true facts.

57. Park Yield would not have purchased the Securities had it known either that (i) Brown had been convicted of a felony in connection with the sale of securities, or that (ii) the Securities had not been, but were required to be, registered with the SEC. Under the Investment Contracts, Park Yield's return on its investment was directly tied to the profitability of Sterling and 4 Square. Management of those entities, including the accounting function, is assigned under the Investment Contracts exclusively to entities under Brown's control – i.e. the Corporate Defendants. Had Park Yield known of Brown's criminal conviction, it would not have placed such trust in Brown. Nor would Park Yield have knowingly participated in a sale of securities that violated the Securities Act or the information that would have been disclosed had the Securities been registered.

58. The Securities are of less value as a result of Defendants' misrepresentations and omissions. On information and belief, Brown's conviction and failure to register the Securities

with the SEC have and will continue to impair the profitability of Sterling and 4 Square due to their inability to raise additional debt or equity financing. Brown's conviction and failure to register the Securities also greatly diminishes the potential sale value of the Securities.

59. This loss in value was foreseeable by Defendants at the time they sold the Securities to Park Yield.

### THIRD CLAIM FOR RELIEF
### (fraud)

60. Park Yield repeats and realleges each of the allegations contained in ¶¶ 1-60 as if fully set forth herein.

61. Defendants did not inform Park Yield that Brown had been convicted of a felony in connection with the sale of securities.

62. Defendants falsely represented to Park Yield that the Securities did not need to be registered with the SEC.

63. Defendants made these omissions and misrepresentations knowingly or recklessly with intent to deceive Park Yield.

64. Defendants knew or should have known that Brown's conviction, and their failure to register the Securities, would be material information to Park Yield.

65. Park Yield reasonably relied on these misrepresentations and omissions in deciding to purchase the Securities. It had no reason to believe that Brown had been convicted of a securities-related fraud or that the Securities were required to be registered with the SEC. It reasonably expected that Defendants would be honest and forthcoming in disclosing the true facts.

66. For the reasons previously stated, Park Yield would not have purchased the Securities had it known either that (i) Brown had been convicted of a felony in connection with

the sale of securities, or that (ii) the Securities had not been, but were required to be, registered with the SEC.

67. Park Yield has been injured as a result of Defendant's fraudulent misrepresentations and omissions in an amount to be determined at trial, but of no less than $280,000, plus pre-judgment interest.

### FOURTH CLAIM FOR RELIEF
### (negligent misrepresentation)

68. Park Yield repeats and realleges each of the allegations contained in ¶¶ 1-68 as if fully set forth herein.

69. As a promoter of Sterling and 4 Square, Brown owed the duties of a fiduciary to Park Yield, including a duty of candor, duty of care, duty of loyalty, and duty to provide Park Yield with correct information.

70. Having voluntarily made representations regarding the absence of any requirement to register the Securities, Brown owed a duty of candor, care and loyalty with respect at least to that subject matter.

71. Brown, as signatory to the 4 Square Investment Contract and by virtue of his control over the Corporate Defendants, falsely represented and warranted in the contract that no registration was required in connection with the execution, delivery and performance of the contract or for the consummation of the transaction contemplated thereby.

72. To the extent that Brown acted through the Corporate Defendants, they owed those same duties to Park Yield.

73. Defendants did not inform Park Yield that Brown had been convicted of a felony in connection with the sale of securities.

74. Defendants falsely represented to Park Yield that the Securities did not need to be registered with the SEC.

75. Defendants knew or should have known that Park Yield would use that information in deciding whether or not to buy the Securities.

76. Park Yield reasonably relied on Defendants' misrepresentations and omissions in deciding to purchase the Securities. It had no reason to believe that Brown had been convicted of a securities-related fraud or that the Securities were required to be registered with the SEC. It reasonably expected that Defendants would be honest and forthcoming in disclosing the true facts.

77. For the reasons previously stated, Park Yield would not have purchased the Securities had it known either that (i) Brown had been convicted of a felony in connection with the sale of securities, or that (ii) the Securities had not been, but were required to be, registered with the SEC.

78. Park Yield has been injured as a result of Defendants' negligent misrepresentations and omissions in an amount to be determined at trial, but of no less than $280,000, plus pre-judgment interest.

## **PRAYER FOR RELIEF**

WHEREFORE, Park Yield requests that the Court enter judgment against Defendants:

A. Awarding disgorgement in the amount of $280,000;

B. Awarding rescission of the Investment Contracts and restitution of the $280,000 that Park Yield paid for the Securities;

C. Awarding compensatory damages in an amount to be determined at trial, but of no less than $280,000;

D.     Awarding pre-judgment interest at the maximum legal rate running from the date of the purchase;

E.     Awarding post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs;

F.     Awarding costs and expenses incurred in this action, including an award of reasonable attorneys' fees;

G.     Awarding punitive damages;

H.     Granting Park Yield such other and further relief as the Court deems just and proper.

Dated: New York, New York
March 2, 2018

                         KAGEN & CASPERSEN PLLC

                         Stuart Kagen, Esq.
                         Joel M. Taylor, Esq.
                         757 Third Avenue, 20th Floor
                         New York, New York 10017
                         (212) 880-2045
                         *Attorneys for Plaintiff Park Yield, LLC*